# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

**KENNETH MITCHELL**                              **CIVIL ACTION NO. 18-1572**

                                                  **SECTION P**

**VS.**

                                                  **JUDGE TERRY A. DOUGHTY**

**DARREL VANNOY**                                 **MAG. JUDGE KAREN L. HAYES**

## REPORT AND RECOMMENDATION

Petitioner Kenneth Mitchell, a prisoner in the custody of Louisiana's Department of Corrections proceeding pro se and in forma pauperis, filed the instant Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 on December 3, 2018. Petitioner attacks his aggravated rape conviction, his cruelty to a person with an infirmity conviction, and the respective life and ten-year concurrent sentences imposed by the Fourth Judicial District Court, Morehouse Parish.[1] For the following reasons, it is recommended that the Petition be dismissed.

## Background

On August 29, 2013, a jury found Petitioner guilty of aggravated rape and cruelty to a person with an infirmity. [doc. # 1, p. 1]. On November 7, 2013, a judge for the Fourth Judicial District Court, Morehouse Parish, sentenced Petitioner to life in prison for aggravated rape and to ten years in prison for cruelty to a person with an infirmity. *Id.* The judge ordered Petitioner to serve the sentences concurrently. *Id.*

Petitioner appealed, claiming that: (1) the evidence introduced at trial was insufficient to sustain his convictions; (2) his two convictions amounted to double jeopardy; (3) the trial court erred when it denied his motion to quash the petit jury venire; (4) his sentences were excessive;

---

[1] This matter has been referred to the undersigned for review, report, and recommendation in accordance with 28 U.S.C. § 636 and the standing orders of the Court.

(5) various issues with the judges and public defenders in Morehouse Parish combined to deprive him of his right to counsel; (6) his trial counsel rendered ineffective assistance in failing to argue that the two charges amounted to double jeopardy, failing to move the court to reconsider his sentences, and failing to prevent "selective prosecution"; (7) he was selectively prosecuted; and (8) the grand jury was not properly impaneled.  *State v. Mitchell*, 49,713 (La. App. 2 Cir. 4/15/15), 163 So. 3d 858, 873; [doc. #s 1, p. 2; 9, pp. 6-22, 50-58].

On April 15, 2015, the Louisiana Second Circuit Court of Appeal affirmed Petitioner's convictions and sentences.[2]  *Mitchell*, 163 So. 3d at 873.

On approximately May 14, 2015, Petitioner filed a writ application before the Louisiana Supreme Court, raising the first five claims listed above that he raised before the appellate court, as well as an additional claim that his appellate counsel rendered ineffective assistance.  [doc. #s 1, p. 2; 9, p. 64].  The Louisiana Supreme Court denied Petitioner's application on May 20, 2016.  *State ex rel. Mitchell v. State*, 2015-1032 (La. 5/20/16), 191 So. 3d 1064.  Petitioner did not apply for certiorari before the United States Supreme Court.  [doc. # 1, p. 3].

On August 23, 2016, Petitioner filed an application for post-conviction relief before the trial court, alleging that his trial counsel: (i) failed to move the trial court to determine whether his mental incompetence, alcoholism, and limited education affected his ability to assist in his defense; (ii) failed to request independent DNA testing; (iii) failed to challenge an expert's testimony concerning the victim's mental condition; and (iv) failed to know the law relating to cruelty to the infirm.  [doc. #s 1-3, pp. 3, 22; 9, pp. 82-85; 9-1, p. 2].  The trial court denied

---

[2] The appellate court found that Petitioner's ineffective assistance of counsel claim relating to "selective prosecution," as well as his miscellaneous claims concerning the judges and public defenders in Morehouse Parish, "would be more properly raised in an application for post-conviction relief" because the record was "not sufficient to resolve all of these issues on direct appeal."  *Id.* at 874.

Petitioner's application on September 12, 2016.  [doc. # 1-3, pp. 22-23].

On September 30, 2016, Petitioner sought supervisory review before the Second Circuit Court of Appeal, claiming that the trial court failed to order, and his counsel failed to request, a competency hearing.  [doc. # 9-1, pp. 28-29].  The appellate court denied Petitioner's writ application on December 21, 2016.  [doc. #s 1, p. 7; 1-3, p. 25].

In January 2017, Petitioner filed a writ application before the Louisiana Supreme Court, claiming that his trial counsel failed to challenge his arrest and that the appellate court failed to apply the proper standard of review.  [doc. # 9-1, p. 32].  Petitioner filed a second or supplemental application on January 16, 2017, claiming: (1) his trial counsel, who was a retired certified public accountant, was not qualified to represent Petitioner because Petitioner suffered from a learning disability and alcoholism; and (2) trial counsel failed to timely investigate Petitioner's "mental health issues . . . ."  *Id.* at 48.

The Louisiana Supreme Court denied Petitioner's application on September 14, 2018. [doc. #s 1-3, pp. 11, 31; 9-1, p. 60]; *State ex rel. Mitchell v. State*, 2017-0215 (La. 9/14/18), 252 So. 3d 464.

On an unknown date, Petitioner filed a Motion for New Trial and a Motion for Appointment of Counsel before the trial court.  [doc. # 1-3, p. 33].  The trial court denied relief on September 18, 2018, construing the motions as a second, untimely application for post-conviction relief.  *Id.* at 26.

Petitioner filed the instant proceeding on December 3, 2018, raising six permutations of ineffective assistance of counsel, a claim of prosecutorial misconduct, and a claim that his initial arrest constituted an illegal seizure. [doc. #s 1; 1-2].

## Law and Analysis

3

This Court cannot consider Petitioner's claims because he failed to properly present them to each appropriate state court for review prior to filing the instant Petition. "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1)(A). The Fifth Circuit explained exhaustion as follows:

> The exhaustion requirement is satisfied when the substance of the federal claim is fairly presented to the highest state court on direct appeal or in state post-conviction proceedings, even if the state court fails to address the federal claim, or, if the federal claim is not fairly presented but the state court addresses it *sua sponte*. A claim is fairly presented when the petitioner asserts the claim in terms so particular as to call to mind a specific right protected by the Constitution or alleges a pattern of facts that is well within the mainstream of constitutional litigation. It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made. Rather, the petitioner must afford the state court a fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim.

*Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013) (internal quotations marks and citations omitted). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.*

"State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). This means that a petitioner must present his claims to each appropriate state court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

Here, Petitioner did not afford the state courts one full opportunity to resolve his

4

constitutional claims.  For instance, Petitioner first claims that his trial counsel failed to discover, interview, and call "any of the personnel . . . from Rayville Recovery Treatment Center . . . to testify" that officers should have allowed Petitioner to "detox" before arresting him and removing him from the treatment facility.  [doc. # 1-2, p. 18].  Petitioner did argue, before the trial and appellate court, that his counsel should have moved for a competency or sanity hearing based on his "extreme alcoholism[.]"  [doc. # 9-1, pp. 3-4, 29, 48].  That claim, however, is not the substantial equivalent of the claim he raises here.  See *Wilder v. Cockrell*, 274 F.3d 255, 261 (5th Cir. 2001) (explaining that, in cases "involving the exhaustion of multiple, distinct ineffective assistance claims," courts should treat each claim separately and perform "an independent exhaustion analysis for each" distinct claim).

Petitioner claims, baldly, that his trial counsel "failed to investigate the mental health issues surrounding this case."  [doc. # 1, p. 5].  Petitioner apparently raised this issue before the Louisiana Supreme Court, arguing without elaboration that his trial counsel erred by failing to "investigate [his] mental health issues 11 months before trial . . . . [sic]."  [doc. # 9-1, p. 48]. However, Petitioner did not present this claim to the trial or appellate courts.

Petitioner, peculiarly, claims (or suggests) that counsel was not qualified to represent a defendant who is undergoing treatment for alcoholism and who has a history of mental health issues.  [doc. # 1, pp. 5-6].  Petitioner raised a similar claim before the Louisiana Supreme Court, but he did not present his claim to the trial or appellate courts.[3]  [See doc. # 9-1, p. 48].

Petitioner claims that his counsel operated under a conflict of interest because counsel maintained a friendship with the trial judge and the district attorney.  [doc. # 1-2, pp. 15-16].

---

[3] Petitioner claimed, before the trial court on collateral review, that his trial counsel failed to "know the law as it pertains to the elements which constitute cruelty to the infirm . . . ."  [doc. # 9-1, p. 3].  That claim, however, is sufficiently distinct from the one here.

Petitioner did not raise this claim before any of the state courts.

Petitioner claims that his counsel failed to "investigate" his arrest and failed to determine if officers could legally remove him from the treatment facility against his wishes and against physician orders.  [doc. # 1-2, p. 26].  He adds that counsel failed to contest the legality of the search and arrest warrants that officers used to find and remove him from the treatment facility. *Id.* at 19.  Petitioner raised this claim, perfunctorily, before the Louisiana Supreme Court on collateral review, but Petitioner did not raise it before the trial or appellate courts.  [See doc. # 9-1, p. 37].

Petitioner claims that counsel failed to impeach or file perjury charges against a witness who provided trial testimony inconsistent with the witness's prior averments.  [doc. # 1-2, pp. 9, 21-22, 26].  Petitioner also claims that the prosecutor engaged in misconduct because the prosecutor knew that the witness lied in an affidavit yet failed to "correct" the witness when she later testified.  [doc. # 1-2, p. 21].  Petitioner attempted to present these claims–or versions thereof–to the trial court in his second application for post-conviction relief, but the trial court denied the application as untimely.  See *Castille v. Peoples*, 489 U.S. 346, 351 (1989) (holding that, when a petitioner has raised a claim in a procedural context "in which its merits will not be considered," he has not "fairly presented" the claim to the state courts and, accordingly, has not satisfied the exhaustion doctrine).  Moreover, Petitioner did not present these claims to the appellate court or to the Louisiana Supreme Court.

Finally, Petitioner claims that officers illegally seized him because they arrested him at the treatment facility before he was properly discharged or before he consented to his release. [doc. # 1-2, pp. 7, 19, 25].  Petitioner raised a related claim before the Louisiana Supreme Court on collateral review, but he did not raise this claim, or a related claim, before either the trial or

appellate courts.  [See doc. # 9-1, p. 37].

Overall, Petitioner did not fairly present any of his claims to all levels of state court in a procedurally proper manner.  In other words, Petitioner did not exhaust his claims.

That said, "A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him." *Coleman v. Thompson*, 501 U.S. 722, 732 (1991).

Here, it is likely that the Louisiana trial court would reject any attempt by Petitioner to pursue another round of post-conviction review because, under LA. CODE CRIM. PROC. art. 930.4(E), "A successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."  Under LA. CODE CRIM. PROC. art. 930.4(C), "If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court shall deny relief."  Further, under LA. CODE CRIM. PROC. art. 930.4(D), "A successive application shall be dismissed if it fails to raise a new or different claim."  In fact, after reviewing Petitioner's writ application, the Louisiana Supreme Court determined: "Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final.  Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review."  [doc. # 1-3, p. 32].

Likewise, under LA. CODE CRIM. PROC. art. 930.8(A), "No application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of Article 914 or 922 . . . ."  Here, the trial court denied Petitioner's ostensible second application for post-conviction relief as untimely, citing Article

930.8(A) and opining that Petitioner's "motion fails to allege any of the exceptions set forth in article 930.8."  [doc. # 1-3, p. 26].

It is also likely that the appellate court would reject any attempt by Petitioner to pursue a second direct appeal because, under LA. CODE CRIM. PROC. art. 914(B), "The motion for an appeal must be made no later than: (1) Thirty days after the rendition of the judgment or ruling from which the appeal is taken."

When a petitioner's claims are technically exhausted, because "he allowed his state law remedies to lapse[,] . . . there is no substantial difference between nonexhaustion and procedural default." *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998); see *Bledsue v. Johnson*, 188 F.3d 250, 254 (5th Cir. 1999) ("Procedural default exists where . . . the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred.").  Here, while technically exhausted, petitioner's claims are procedurally barred.

A petitioner, however, may be excepted from the procedural default rule if he can show cause for his default and "prejudice attributed thereto," or if he can demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."

*Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997).  To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that a petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim or objection despite recognizing it, does not constitute cause for a procedural default.  *Id.* at 486.  In addition, neither pro se status nor ignorance of the law is sufficient cause

to excuse a procedural default.  *Saahir v. Collins*, 956 F.2d 115, 118 (5th Cir. 1992).

Here, Petitioner does not offer any cause for his procedural default (perhaps predictably as the Court recognizes Petitioner's procedural default sua sponte).[4]  See *Magouirk*, 144 F.3d at 358 ("[A] federal district court may, in the exercise of its discretion, raise a habeas petitioner's procedural default sua sponte and then apply that default as a bar to further litigation of petitioner's claims.").  Moreover, the record, at present, does not reveal any cause sufficient to excuse Petitioner's procedural default.

Having failed to show an objective cause for his default, the Court need not determine whether prejudice exists.  See *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) ("The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown.").  The undersigned does note, however, that even if Petitioner established cause, it is unlikely that he could establish prejudice because he provides no reason to suspect that the Louisiana courts would rule in his favor on the defaulted claims.

Thus, Petitioner's claims are procedurally barred from review absent a showing that a fundamental miscarriage of justice will occur if the Court does not review the merits of the claims.  To establish a fundamental miscarriage of justice, Petitioner must provide evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986).  Petitioner must show that, "but for constitutional error, no reasonable fact-finder would have found [him] guilty of the underlying offense." *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997).

---

[4] That said, the form Petition that Petitioner used to initiate this proceeding specifically asked him to "explain why" he "did not exhaust [his] state remedies . . . ."  [doc. # 1, pp. 5, 7]. Petitioner did not provide an explanation. *Id.*

9

Here, Petitioner presents no new evidence[5] and does not argue that a fundamental miscarriage of justice will occur if the Court does not review his claims.[6]  Accordingly, his claims should be denied because he failed to exhaust his state court remedies and, although now technically exhausted, the claims are procedurally defaulted.

This Report and Recommendation provides Petitioner with notice that his claims are procedurally defaulted absent either cause and prejudice or a fundamental miscarriage of justice.[7] The fourteen-day objection period provides Petitioner with an adequate opportunity to respond.

### Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Petitioner Kenneth Mitchell's Petition for Writ of Habeas Corpus, [doc. # 1], be **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen**

---

[5] "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

[6] The undersigned finds it unlikely that Petitioner could demonstrate actual innocence because the success of his claims is not predicated on his innocence.

[7] See *Magouirk*, 144 F.3d at 359 (holding that "the Magistrate Judge's Memorandum and Recommendation placed [the petitioner] on notice that procedural default was a potentially dispositive issue with respect to three of his claims.").

(14) days following the date of its service, or within the time frame authorized by FED. R. CIV. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

In Chambers, Monroe, Louisiana, this 24th day of January, 2019.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE